IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WIRELESS AGENTS, L.L.C., | § | |
| | § | |
| Plaintiff-counterdefendant, | § | |
| | § | Civil Action No. 3:05-CV-0289-D |
| VS. | § | |
| | § | |
| SONY ERICSSON MOBILE | § | |
| COMMUNICATIONS AB, et al., | § | |
| | § | |
| Defendants- | § | |
| counterplaintiffs. | § | |

MEMORANDUM OPINION
<u>AND ORDER</u>

In this patent infringement action, the court must decide whether defendants-counterplaintiffs are entitled to summary judgment establishing non-infringement of their accused wireless communication devices (mobile phones).  The court holds that they are entitled to summary judgment dismissing the literal infringement claim but that genuine issues of material fact preclude such relief as to infringement under the doctrine of equivalents.

I

Because this suit is the subject of a prior published opinion, *see Wireless Agents, L.L.C. v. Sony Ericsson Mobile Communications AB*, 390 F.Supp.2d 532 (N.D. Tex.) (Fitzwater, J.) (*"Wireless I"*), *appeal docketed*, No. 05-1054 (Fed. Cir. Nov. 14, 2005), the court will restrict its recitation of the background facts and procedural

history to what is necessary to understand today's decision.[1] Plaintiff-counterdefendant Wireless Agents, L.L.C. ("Wireless") sues defendants-counterplaintiffs Sony Ericsson Mobile Communications AB and Sony Ericsson Mobile Communications (USA) Inc. (collectively, "Sony") for infringement of United States Patent No. 6,665,173 ("the '173 patent"), entitled "Physical Configuration of a Hand-Held Electronic Communication Device." Wireless alleges that Sony is infringing the '173 patent by making, using, selling, offering for sale, and/or importing in or into the United States, without authority, products that fall within the scope of the '173 patent, including Sony's S700i, S710a, and W600 mobile phones. Wireless alleges that Sony is liable under 35 U.S.C. § 271(b) for inducing infringement and under § 271(c) for contributory infringement. Sony asserts, *inter alia*, the affirmative defense of patent invalidity, and it brings counterclaims for declaratory judgment of non-infringement and invalidity.

The patented invention attempts to solve various problems associated with conventional wireless communication devices, such as mobile phones, personal digital assistants, handheld computers, and two-way pagers. According to the patent specification, some of

_____

[1]In doing so, the court recounts the evidence in the light most favorable to Wireless, as the summary judgment nonmovant, and draws all reasonable inferences in its favor. *See, e.g.*, *Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1367 (Fed. Cir. 2005); *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000).

these devices have inappropriate means of data entry: the data-entry tool is too small, data entry is slow and error prone, or an additional peripheral data-entry device is required.  For example, the mobile phone typically has

> a twelve-digit keypad designed primarily for numeric data entry, although the keyboard usually supports alphanumeric character entry for the purpose of entering proper names into an address book maintained in the phone's memory, whereby the commonly used method of accessing alphanumeric characters is to switch the device into a text entry mode, then press a key repeatedly to access a particular one of a subset of characters available for each key.

D. App. 15.  The patent specification describes this method of data entry as "extremely slow, awkward, error prone, and not appropriate for a device intended to transfer textual data on a regular basis." *Id.*  Other devices do have an appropriate means of data entry but not an adequate display: "[T]he device[s] transform[ ] between multiple states[,] which prevent[s] the display from being seen in one of the states, limiting the convenience of using the device on a frequent basis."  *Id.*

The patented invention seeks to improve upon existing wireless communication devices by combining, *inter alia*, a convenient means of data entry and an appropriate display into a single device.  The invention consists of a display portion and a body portion attached to it.  The display portion is relatively large, and the body portion contains an alphanumeric keyboard.  The display portion and the body portion pivot so that the display portion is constantly

visible and the alphanumeric keyboard can be concealed until needed. The invention is designed to be "small enough to carry and convenient enough to use under usage conditions typically encountered with a mobile phone device." *Id.* at 16.

Sony's devices are mobile phones that have a display portion and a body portion that pivot so that the display portion is constantly visible. Each accused device contains the twelve-digit keypad typical for mobile phones, consisting of the numerals 0 to 9 and the "*" and "#" keys. The keypad also includes two extra keys: "Power" and a "Sony/Ericsson Operator Defined Key." Each letter of the alphabet is associated with one of the keys for the numerals 2 to 9, permitting alphanumeric data entry. To facilitate alphanumeric data entry, the devices utilize predictive text software that includes a built-in dictionary to recognize the most commonly used word for each sequence of key presses, enabling the user to input a given letter or number by pressing a key on the keypad only once.

Wireless alleges that Sony's devices infringe claims 1, 2, 3, 4, 6, 15, 16, 17, 18, and 19 of the '173 patent. Claim 1 requires, *inter alia*, "an alphanumeric keyboard carried by the body portion" of the device.[2] *Id.* at 21. Claim 1 is the only independent claim

---

[2]Claim 1 reads:

> A hand-held, electronic computing device
> having a physical configuration comprising:

of the '173 patent; all remaining asserted claims depend on claim 1.[3]  Because the remaining claims depend on claim 1, the asserted dependent claims all require "an alphanumeric keyboard carried by the body portion."

Sony moves for summary judgment of non-infringement on Wireless' infringement claim and on its declaratory judgment action for non-infringement.  Wireless moves the court to abate or in the alternative dismiss Sony's summary judgment motion, and it objects to Sony's response to the motion to abate or dismiss.

---

a body portion;

a display portion pivotally coupled to the body portion;

a constantly visible display carried by the display portion;

an alphanumeric keyboard carried by the body portion;

wherein the alphanumeric keyboard is at least partially concealed by the display portion when not in use; and

wherein the display portion pivots relative to the body portion in a plane that is generally parallel with the alphanumeric keyboard.

D. App. 21.

[3]Claims 2, 3, 4, 6, and 15 depend on claim 1.  *See* D. App. 21. Claims 16, 17, and 19 depend on claim 15.  *See id.*  Claim 18 depends on claim 16.  *See id.*  Thus all the allegedly infringed claims apart from claim 1 are dependent on claim 1.

- 5 -

II

The court considers as a threshold matter Wireless' motion to abate or in the alternative dismiss Sony's motion for summary judgment.

A

In *Wireless I* the court denied Wireless' motion for preliminary injunction.[4]   *Wireless I*, 390 F.Supp.2d at 540. Wireless has appealed the ruling.  It requests the court to abate all proceedings pertaining to Sony's summary judgment motion until after the Federal Circuit construes the disputed claim term "alphanumeric keyboard" on appeal.  Wireless also maintains that the court has no subject matter jurisdiction over the claim construction issue until the Federal Circuit remands the case. Sony responds that if the Federal Circuit construes the disputed claim term, its decision will not be conclusive.  It also contends that Wireless' interlocutory appeal has not divested the court of jurisdiction over the merits of the case and that abating the summary judgment motion would be fundamentally unfair.

Wireless' motion lacks merit and is denied.  A notice of appeal from a preliminary injunction ruling does not divest this court of jurisdiction over other aspects of the lawsuit.  "The

---

[4]Wireless sought a preliminary injunction against Sony Ericsson Mobile Communications (USA) Inc. only, not against Sony Ericsson Mobile Communications AB.  *Wireless I*, 390 F.Supp.2d at 533-34 n.2.

- 6 -

filing of a notice of appeal . . . divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam); *see also In re Transtexas Gas Corp.*, 303 F.3d 571, 578-79 (5th Cir. 2002). Because Wireless has appealed the court's denial of a preliminary injunction, the Federal Circuit has exclusive jurisdiction over the preliminary injunction motion, and this court cannot modify its preliminary findings of fact and conclusions of law during the pendency of the appeal. *See Chemlawn Servs. Corp. v. GNC Pumps, Inc.*, 823 F.2d 515, 518 (Fed. Cir. 1987) (holding that district court had no jurisdiction to issue findings of fact and conclusions of law supporting preliminary injunction after notice of appeal filed). But the merits of the case, including the final construction of claim terms based on the complete record, are not on appeal, and this court retains subject matter jurisdiction to decide them. *See Taylor v. Sterrett*, 640 F.2d 663, 668 (5th Cir. Unit A Mar. 1981) ("[W]here an appeal is allowed from an interlocutory order, the district court may still proceed with matters not involved in the appeal.").

Moreover, the court declines as a matter of discretion to abate a ruling on the merits. In *Wireless I* the court emphasized that its construction of the claim term "alphanumeric keyboard" was "tentative, based on the preliminary record before the court." *Wireless I*, 390 F.Supp.2d at 537. The court specifically

"retain[ed] the authority to construe the claims differently at a later stage and on a more complete record." *Id.* (citing *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1345 n.3 (Fed. Cir. 2003) ("[A] district court can issue 'tentative' or 'rolling' claim constructions when 'faced with construing highly technical claim language on an expedited basis,' such as in a preliminary injunction proceeding . . . ."); *Sofamor Danek Group, Inc. v. DePuy-Motech, Inc.*, 74 F.3d 1216, 1221 (Fed. Cir. 1996) ("[T]he trial court has no obligation to interpret claim[s] conclusively and finally during a preliminary injunction proceeding.")). Because this court's claim construction was based on a preliminary record, the Federal Circuit's forthcoming "claim construction [will be] based on the same preliminary record and [will be] therefore likewise preliminary." *Oakley*, 316 F.3d at 1345 n.3. This is especially true since Wireless now maintains that the record is more complete and contains "new intrinsic evidence not previously available to the Court." P. Br. 4. Moreover, the court is not bound at the summary judgment stage by the Federal Circuit's claim construction at the conclusion of the preliminary injunction appeal. *See Transonic Sys. v. Non-Invasive Med. Techs. Corp.*, 75 Fed. Appx. 765, 774 (Fed. Cir. 2003) (unpublished opinion) ("A district court therefore is at liberty to change the construction of a claim term as the record in a case evolves after a preliminary injunction appeal.").

- 8 -

The court therefore denies Wireless' motion to abate or in the alternative dismiss Sony's motion for summary judgment.

B

Wireless objects to Sony's response to its motion to abate or dismiss Sony's motion for summary judgment.  The court overrules the objection.[5]

Wireless maintains that, in a reversal of its position, Sony now contends before the Federal Circuit that the court does not have jurisdiction to entertain issues subsumed in the preliminary injunction appeal.  Wireless' description of Sony's having "reversed [its] position," P. Obj. 1, is misplaced.  Sony only maintains before the Federal Circuit that this court had no jurisdiction to consider in connection with the preliminary injunction motion Wireless' November 29, 2005 supplemental appendix to its brief in support of its motion to reconsider because Wireless had already filed its notice of appeal.  Wireless has not demonstrated that Sony contends the court lacks jurisdiction to decide the instant summary judgment motion.  Accordingly, Wireless' objection is overruled.

---

[5]Procedurally, this objection is nothing more than an additional argument for opposing Sony's response to Wireless' motion to abate or dismiss.  If the argument could not have been included in Wireless' reply brief filed November 30, 2005——e.g., because Wireless had no grounds to raise it on the date the reply brief was due——Wireless should have sought leave to file supplemental briefing.

- 9 -

III

The court now considers the merits of Sony's motion for summary judgment of non-infringement as to Wireless' infringement claim and its declaratory judgment action of non-infringement.

A

"Infringement is a two-step inquiry, in which a court must first construe disputed claim terms, and then compare the properly construed claims to the accused device." *Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1367-68 (Fed. Cir. 2005) (citing *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc)).[6]  Claim construction is a matter of law reserved exclusively for the court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996).  Once the claims have been properly construed, a finding of infringement or non-infringement, whether literal or under the doctrine of equivalents, is a factual determination. *Nazomi Commc'ns*, 403 F.3d at 1367; *Middleton, Inc. v. Minn. Mining & Mfg. Co.*, 311 F.3d 1384, 1387 (Fed. Cir. 2002). Summary judgment is proper if no reasonable jury could find that the accused devices read on the properly construed claims.  *See Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1076, 1081

---

[6]The court in *Wireless I* thoroughly explained the process by which it construes patent claims.  Rather than recount the entire discussion, and since the parties in litigating Sony's summary judgment motion offer little new claim construction evidence, the court will simply restate some basic principles and refer the parties to *Wireless I* for a more detailed explanation of the law.

(Fed. Cir. 2005) (holding that summary judgment of infringement was proper where there was no genuine dispute).

"[T]he words of a claim 'are generally given their ordinary and customary meaning.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "[O]rdinary and customary meaning . . . is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention . . . ." *Id.* at 1313. When this is not "immediately apparent, . . . the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean," which would "include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence." *Id.* at 1314 (internal quotations omitted).

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* at 1315 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics*, 90 F.3d at 1582). Although the court may consider extrinsic evidence, "which 'consists of all evidence external to the patent and prosecution

- 11 -

history,'" *id.* at 1317 (quoting *Markman*, 52 F.3d at 980), extrinsic evidence "is less significant than the intrinsic record in determining the legally operative meaning of claim language," *id.* (internal quotation omitted).  "[A] court should discount any expert testimony 'that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history . . . .'" *Id.* at 1318 (quoting *Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998)).  Extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms."  *Id.*  "It is therefore entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims."  *Id.* at 1317.

B

In *Wireless I* Wireless only contended that Sony's accused devices literally infringed the '173 patent.  It did not rely on the doctrine of equivalents.  *Wireless I*, 390 F.Supp.2d at 535 n.3. The court held that Wireless had not demonstrated at the preliminary injunction stage that it would likely prove infringement of the '173 patent at trial.  It began its infringement analysis by tentatively construing claim 1.  Although Wireless had submitted proposed constructions for ten terms within claim 1 and Sony disputed three of them, the court stated that it

needed only construe the term "alphanumeric keyboard" to conclude that Wireless was not entitled to injunctive relief. *Id.* at 537-38 n.5.

Wireless proposed the following construction for the claim term "alphanumeric keyboard": "[A]n 'alphanumeric keyboard' is a regular arrangement of keys. When activated, these keys are used to generate the internal representation of symbols. 'Alphanumeric' symbols include letters of the alphabet and numbers 0-9. 'Alphanumeric keyboards' allow the generation of internal representations for this set of symbols." *Id.* at 537-38. Sony proposed the following construction: "An input device having a QWERTY, FITALY, or Dvorak layout or any other alphanumeric layout that includes a substantially full set of alphabetic and numeric keys." *Id.* at 538. The court noted that Wireless relied exclusively on extrinsic evidence to support its proposed construction and that the text of Sony's proposed construction was taken directly from the '173 patent's specification. *Id.* The court rejected Wireless' construction, concluding that the "patent specification unambiguously distinguishes between the invention's keyboard and the mobile phone's standard twelve-digit keypad" and that Wireless' proposed construction was thus too broad because it would include the twelve-digit keypad. *Id.* at 539. The court instead adopted Sony's proposed construction, *id.*, but it emphasized that its construction was "tentative, based on the

- 13 -

preliminary record before the court," *id.* at 537. "The court retain[ed] the authority to construe the claims differently at a later stage and on a more complete record." *Id.* at 537. The court held that Wireless was not entitled to a preliminary injunction because it had not demonstrated a reasonable likelihood of success in proving infringement. *Id.* at 540.

In construing "alphanumeric keyboard," the court relied heavily on the '173 patent's intrinsic evidence——specifically, the patent specification. The court noted that the specification detailed shortcomings with the conventional mobile phone, including its "extremely slow, awkward, error prone, and [in]appropriate" method of alphanumeric data entry, which consists of "switch[ing] the device into a text entry mode, then press[ing] a key repeatedly to access a particular one of a subset of characters available for each key." *Id.* at 538-39. The specification described the patented device's alphanumeric keyboard as "easier and faster to use and learn than the keypads . . . on most mobile phones." *Id.* at 539 (ellipsis in original). And it described the alphanumeric keyboard as "a keyboard with a layout such as the common 'QWERTY' layout, . . . . the 'FITALY' layout, the 'Dvorak' layout[,] or any other alphanumeric layout that includes a substantially full set of alphanumeric keys." *Id.* (alteration in original) (emphasis omitted). According to the specification, the device's "full alphanumeric keyboard allows the user to quickly and easily

- 14 -

transmit messages and other textual and graphical communications in a complete and intuitive manner" and is "effortless to learn and use." *Id.* (citations omitted).  Relying on the intrinsic evidence, the court rejected Wireless' proposed construction of "alphanumeric keyboard"——"a regular arrangement of keys"——and instead preliminarily adopted Sony's proposed construction: "An input device having a QWERTY, FITALY, or Dvorak layout or any other alphanumeric layout that includes a substantially full set of alphabetic and numeric keys." *Id.* at 538-39.

C

In their briefing on the summary judgment motion, the parties focus their arguments on the construction of "alphanumeric keyboard" alone, disregarding the remaining claim terms.  Thus the court in deciding the motion will construe "alphanumeric keyboard" only.  In its summary judgment motion, Sony urges the court to adopt its preliminary construction of "alphanumeric keyboard" as its final construction.  Sony relies on the court's analysis of the intrinsic evidence in *Wireless I*, contending that this evidence dictates that an "alphanumeric keyboard" have a substantially full set of alphabetic and numeric keys and maintaining that Wireless cannot rely on extrinsic evidence to contradict the meaning of "alphanumeric keyboard" that is contained in the specification. Wireless posits that the court improperly construed "alphanumeric keyboard" on an incomplete record at the preliminary injunction

stage and impermissibly limited the claims of the '173 patent to the preferred embodiment.[7]   Wireless also directs the court to the prosecution history of United States Patent Application No. 10/655,802 ("the '802 application"), which Wireless maintains supports a broader construction for "alphanumeric keyboard" than the one the court adopted in *Wireless I*.   Sony replies that the '802 application's prosecution history does not support Wireless' assertions.

Because the parties' arguments are substantially the same ones made at the preliminary injunction stage, the court will address only the new claim construction evidence before issuing its final claim construction for "alphanumeric keyboard."  Wireless submitted a November 29, 2005 notice of filing supplemental appendix to its brief in support of its motion to reconsider, which contains the prosecution history of the '802 application.   Wireless filed the supplemental appendix even though the court had earlier denied Wireless' motion to reconsider and Wireless had already appealed the denial of the preliminary injunction motion and the motion to reconsider.   Sony recognizes the "procedural impropriety" of Wireless' filing a supplemental appendix for a motion that had already been decided by the court and that was the subject of a

---

[7]Rather than restate its analysis in its response to Sony's summary judgment motion, Wireless reasserted and incorporated by reference all of the legal and factual assertions it made in its motion for preliminary injunction and motion to reconsider.

pending appeal. D. Br. 2 n.6. Nevertheless, Sony does not object to the supplemental appendix; instead, it contends the '802 application's prosecution history does not support Wireless' assertions.

Wireless avers that during the prosecution of the '802 application——which it maintains has an identical specification to that of the '173 patent——the Patent and Trademark Office ("PTO") Examiner ruled that an "alphanumeric keyboard" should be construed to include "a qwerty, a Fitaly, a Dvorak or a twelve-key keyboard." P. Br. 3 (emphasis omitted) (quoting P. Supp. App. 32-33). Wireless contends the prosecution histories of related applications are highly relevant and useful evidence in determining a patent's scope, and that the PTO Examiner's conclusion is wholly consistent with Wireless' construction of "alphanumeric keyboard" as specifically including a twelve-digit keypad. Sony alleges that Wireless has misrepresented the prosecution history of the '802 application. It maintains that, in response to the PTO's rejection of all claims in the '802 application, Wireless removed the word "alphanumeric" from the claims, and that the PTO Examiner made no conclusions relating to the construction of "alphanumeric keyboard."

The prosecution history of the '802 application is extrinsic evidence. *See Phillips*, 415 F.3d at 1317 (holding that extrinsic evidence "consists of all evidence external to the patent and

prosecution history" (quoting *Markman*, 52 F.3d at 980)). As such, it is less reliable than the '173 patent's specification in construing that patent's claim terms, and the court should discount it if it is clearly at odds with the claim construction mandated by the intrinsic evidence. *See id.* at 1317-18. And because, as the court held in *Wireless I*, "the intrinsic evidence provides adequate grounds for the court to construe the term 'alphanumeric keyboard,'" *Wireless I*, 390 F.Supp.2d at 540, it is improper for the court to rely on extrinsic evidence, including the '802 application's prosecution history. *See Vitronics*, 90 F.3d at 1583 (If "an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term . . . , it is improper to rely on extrinsic evidence.").

Moreover, even if the court were to afford great weight to the '802 application's prosecution history, it does not support Wireless' assertions. To support its contention that the PTO Examiner "ruled that an 'alphanumeric keyboard' should be construed to include 'a qwerty, a Fitaly, a Dvorak or a twelve-key keyboard,'" P. Br. 3, Wireless cites claims 67, 68, and 69 of the '802 application. Claim 67 depends on claim 1, claim 68 depends on claim 31, and claim 69 depends on claim 56. At one point, claims 1 and 31 required, *inter alia*, "an alphanumeric keyboard carried by the body portion." P. Supp. App. 16, 25. In response to PTO action, the '802 applicant amended claims 1 and 31 such that the

- 18 -

"alphanumeric keyboard" limitation was removed.  These claims now include the limitation of "a keyboard carried by the body portion." *Id.* at 15, 16, 25.  Claim 56 also contains the limitation of "a keyboard carried by the body portion."  *Id.* at 30.  Claims 67, 68, and 69 each contain the limitation that the "keyboard [be] selected f[ro]m the group of a qwerty, a Fitaly, a Dvorak or a twelve-key keyboard."  *Id.* at 32-33.  Wireless' contention that this language is somehow equivalent to a ruling by the PTO Examiner regarding the construction of "alphanumeric keyboard" is incongruous.  To the extent that claims 67, 68, and 69 might enlighten a person of ordinary skill in the art as to whether a claim term includes "a twelve-key keyboard" in its definition, that term is "keyboard," not "alphanumeric keyboard."

Relying only on the intrinsic evidence of the '173 patent as the court explained in *Wireless I*, the court adopts its tentative construction of "alphanumeric keyboard" at the preliminary injunction stage as its final construction.  Thus the court construes "alphanumeric keyboard" as an input device having a QWERTY, FITALY, or Dvorak layout or any other alphanumeric layout that includes a substantially full set of alphabetic and numeric keys.

- 19 -

IV

Having properly construed the claim term "alphanumeric keyboard," the court turns to the question whether there is a genuine issue of material fact regarding whether the accused devices infringe the '173 patent either literally or under the doctrine of equivalents.

A

Sony first contends that its devices do not infringe the '173 patent because Wireless judicially admitted non-infringement in a status report it filed with the court. Wireless maintains that its status report did not constitute a judicial admission.

Wireless filed on October 11, 2005 a status report, in which it averred:

> To efficiently place this dispositive issue (i.e., whether [Wireless] clearly and unambiguously disclaimed 12 key keyboards containing alphabetic and numeric symbols from the definition of "alphanumeric keyboard"), [Wireless] has requested that [Sony] . . . file [a] motion[ ] for summary judgment based upon the Court's definition for alphanumeric keyboard. [That] request[ ] [is] pending. Should such motion[ ] be filed, [Wireless] will in its response[ ] stipulate that, if the Court were to adopt its preliminary claim construction as a final claim construction, the accused devices would not infringe under the Court's definition of alphanumeric keyboard. [Wireless] would then be able to appeal immediately, and obtain appellate guidance on this dispositive issue. Should the Federal Circuit agree with the Court's construction, all parties would benefit from the avoidance of a significant expenditure of resources.

- 20 -

P. Oct. 11, 2005 Status Report 2.

Sony posits that this representation constitutes a judicial admission of non-infringement and is therefore binding on Wireless. It contends that Wireless intended its statement as a waiver to relieve Sony of the burden of putting on evidence to oppose Wireless' allegations of infringement.  Wireless essentially avers that it proposed the idea of a summary judgment motion so that the court could finalize its tentative claim construction quickly, thereby permitting Wireless to promptly appeal and bring the final claim construction before the Federal Circuit.

The court holds that Wireless' statement did not constitute a binding judicial admission concerning non-infringement.  "A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them."  *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001).[8]  A statement "may be considered a judicial admission if it was made intentionally as a waiver, releasing the opponent from proof of fact."  *Id.*  It is clear from the language of Wireless' status report that it intended merely to bring about prompt review of the court's claim construction and did not intend

---

[8]For purposes of this legal principle, the court concludes that the law of the Fifth Circuit controls because the premise neither pertains to nor is unique to patent law. *See, e.g., Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 856 (Fed. Cir. 1999) (quoting *Molins PLC v. Quigg*, 837 F.2d 1064, 1066 (Fed. Cir. 1988)).

to waive the factual issue of infringement under the doctrine of equivalents. Even if Wireless' statement did constitute a judicial admission, "[a]dmissions made in superseded pleadings are as a general rule considered to lose their binding force, and to have value only as evidentiary admissions." *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 n.5 (5th Cir. 1983); *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 939 F. Supp. 533, 541 (N.D. Tex. 1996) (Fitzwater, J.). Wireless has superseded any judicial admission by contending in its briefing that, even under the court's final construction, Sony's devices infringe under the doctrine of equivalents. The court thus declines to grant Sony summary judgment of non-infringement on the ground that Wireless has judicially admitted non-infringement.

B

Sony argues that its devices do not literally infringe the '173 patent because they do not have an "alphanumeric keyboard."

"Literal infringement requires the patentee to prove that the accused device contains each limitation of the asserted claim(s)." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000) (citing *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998)). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Id.* (citing *Mas-Hamilton Group*, 156 F.3d at 1211).

Sony avers that its devices have standard twelve-digit mobile-

phone keypads that lie outside the court's construction of "alphanumeric keyboard," which is a limitation of claim 1 and all the asserted dependent claims. Wireless does not attempt to demonstrate that Sony's devices literally infringe the '173 patent under the court's construction of "alphanumeric keyboard." Instead, Wireless focuses its brief on attempting to persuade the court that its preliminary claim construction was in error and that Sony's devices infringe under the doctrine of equivalents.

The court agrees with Sony that a reasonable trier of fact could not find that its devices contain an "alphanumeric keyboard," as the court has construed that claim limitation. Because this limitation is absent from the accused devices, there can be no literal infringement. *See id.* Accordingly, the court holds that Sony's accused devices do not literally infringe the '173 patent, and it is entitled to summary judgment to that extent.

C

Sony seeks summary judgment on the grounds that its accused devices do not infringe the '173 patent under the doctrine of equivalents. It contends that the '173 patent's sharp criticism of the standard twelve-digit mobile-phone keypad and discussion of the advantages provided by an alphanumeric keyboard demonstrate that the accused devices' twelve-digit keypads are not equivalent to alphanumeric keyboards and that the patent's disclosure of the unclaimed mobile-phone keypad bars application of the doctrine of

equivalents as a matter of law.   Wireless maintains that a fact issue exists regarding infringement under the doctrine of equivalents because a reasonable jury could find that an arrangement of keys that is associated with numerals and is capable of inputting all alphabetic characters and numerals 1 through 10 is equivalent to an alphanumeric keyboard, as construed by the court. Wireless also posits that the accused devices' predictive text software——which permits a user to input a given letter or number by pressing a single key on the keypad one time——can be used to achieve the same function in the same way to obtain the same result as a full-sized keyboard.

"If an asserted claim does not literally read on an accused product, infringement may still occur under the doctrine of equivalents if there is not a substantial difference between the limitations of the claim and the accused product." *Id.* at 1250-51 (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29, 39-41 (1997)).   "The doctrine of equivalents extends the right to exclude beyond the literal scope of the claims." *Johnson & Johnston Assocs. v. R.E. Serv. Co.*, 285 F.3d 1046, 1053 (Fed. Cir. 2002) (en banc) (per curiam).   "Equivalence is shown by evidence that the accused device contains an element that is not substantially different from any claim element that is literally lacking or that the claimed limitation and the accused component perform[ ] substantially the same function in substantially the

same way to achieve substantially the same result." *Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1371 (Fed. Cir. 2000) (internal quotations and citations omitted) (alteration in original).  Under the disclosure-dedication rule, "when a patent drafter discloses but declines to claim subject matter, . . . this action dedicates that unclaimed subject matter to the public. Application of the doctrine of equivalents to recapture subject matter deliberately left unclaimed would 'conflict with the primacy of the claims in defining the scope of the patentee's exclusive right.'" *Johnson & Johnston*, 285 F.3d at 1054 (quoting *Sage Prods. Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1424 (Fed. Cir. 1997)). "Infringement under the doctrine of equivalents is a question of fact." *Kraft Foods*, 203 F.3d at 1371 (citing *Warner-Jenkinson Co.*, 520 U.S. at 40); *Bayer AG*, 212 F.3d at 1251 (citing *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 161 F.3d 688, 692 (Fed. Cir. 1998)).  "Application of the disclosure-dedication rule is a question of law . . . ." *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1378 (Fed. Cir. 2005) (citing *Toro Co. v. White Consol. Indus., Inc.*, 383 F.3d 1326, 1331 (Fed. Cir. 2004)).

The disclosure-dedication rule does not bar the application of the doctrine of equivalents in this case.  The '173 patent discloses a mobile phone with a twelve-digit keypad capable of alphanumeric data entry by "switch[ing] the device into a text entry mode, then press[ing] a key repeatedly to access a particular

one of a subset of characters available for each key." D. App. 15.
It is this specific method of alphanumeric data entry that the
specification criticizes as "being extremely slow, awkward, error
prone, and not appropriate for a device intended to transfer
textual data on a regular basis." *Id.* If the only method of
alphanumeric data entry on the accused devices were to repeatedly
press one of the twelve keys to access the desired alphanumeric
character out of a subset of characters associated with that key,
then the disclosure-dedication rule would arguably apply. But
according to the declaration of Wireless' expert, Gerhard Deffner,
Ph.D. ("Dr. Deffner"), the accused devices utilize predictive text
software that permits a user to input a given letter or number by
pressing a key on the keypad only once. This method of
alphanumeric data entry was not disclosed in the patent
specification. Thus the court holds on the present record that the
disclosure-dedication rule does not bar application of the doctrine
of equivalents.

Moreover, Wireless has demonstrated the existence of a genuine
issue of material fact regarding whether there is any substantial
difference between an alphanumeric keyboard and the accused
devices' twelve-key keypad combined with the predictive text
software. According to Dr. Deffner's declaration, the accused
devices' "T9 Text Input Method" uses a built-in dictionary to
recognize the most commonly used word for each sequence of key

presses, which permits the user to press each key only once, even if the desired letter is not the first letter on the key.  P. App. 2, ¶ 4.  Dr. Deffner opines that this method

> permits a user to achieve the same function (*i.e.*, entry of data into the device), in the same way (*i.e.*, by pressing a key on the keypad a single time for each letter or number typed), to obtain the same result (*i.e.*, entry of a single letter or number for each key depression) as a full-sized keyboard.

*Id.*  Sony does not direct the court to any evidence that controverts Dr. Deffner's declaration.  A reasonable jury could find based on Dr. Deffner's opinion that the accused devices contain a substantial equivalent to the alphanumeric keyboard.

Because Wireless has created a genuine issue of material fact regarding whether the accused devices contain a substantial equivalent to the alphanumeric keyboard, and since Sony has not demonstrated that the accused devices lack any other claim limitation, Sony is not entitled to summary judgment of non-infringement under the doctrine of equivalents.[9]

* * *

Sony's November 2, 2005 motion for summary judgment is granted in part and denied in part.  Wireless' November 22, 2005 motion to abate or in the alternative dismiss Sony's motion for summary

---

[9]Sony also requested that, in the event that the court grants summary judgment, it dismiss without prejudice Sony's counterclaims for invalidity to enable Wireless to appeal the court's ruling immediately.  In view of the court's ruling on the summary judgment motion, this request is denied as moot.

judgment is denied.  Wireless' March 10, 2006 objection to Sony's response to Wireless' motion to abate or dismiss Sony's motion for summary judgment is overruled.

**SO ORDERED.**

May 3, 2006.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE