IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF TEXAS
                               DALLAS DIVISION

WIRELESS AGENTS, L.L.C.,             §
                                     §
     Plaintiff-counterdefendant,     §
                                     § Civil Action No. 3:05-CV-0289-D
VS.                                  §
                                     §
SONY ERICSSON MOBILE                 §
COMMUNICATIONS AB, et al.,           §
                                     §
     Defendants-                     §
     counterplaintiffs.              §

                         MEMORANDUM OPINION
                            AND ORDER

     In this action for infringement of United States Patent No. 6,665,173 ("the '173 patent"), defendants-counterplaintiffs Sony Ericsson Mobile Communications AB and Sony Ericsson Mobile Communications (USA) Inc. (collectively, "Sony") move for reconsideration of the court's decision granting in part and denying in part Sony's motion for summary judgment of non-infringement. *See Wireless Agents, L.L.C. v. Sony Ericsson Mobile Commc'ns AB*, 2006 WL 1189687 (N.D. Tex. May 3, 2006) (Fitzwater, J.) ("*Wireless II*"). The court denies the motion.

                                     I

     In *Wireless Agents, L.L.C. v. Sony Ericsson Mobile Communications AB*, 390 F.Supp.2d 532 (N.D. Tex. 2005) (Fitzwater, J.) ("*Wireless I*"), aff'd, 2006 WL 2091197 (Fed. Cir. July 26, 2006) (unpublished opinion) ("*Wireless III*"), the court denied plaintiff-counterdefendant Wireless Agents L.L.C.'s ("Wireless's") motion for preliminary injunction. *See id.* at 540.  The court

tentatively construed the claim term "alphanumeric keyboard" as "[a]n input device having a QWERTY, FITALY, or Dvorak layout or any other alphanumeric layout that includes a substantially full set of alphabetic and numeric keys." *Id.* at 538-39. In *Wireless II* the court adopted this tentative claim construction as its final claim construction, *Wireless II*, 2006 WL 1189687, at *8, and it granted Sony summary judgment on Wireless's literal infringement claim because Sony's accused devices do not contain an alphanumeric keyboard, as the court construed that term, *id.* at *10. The court denied Sony's motion for summary judgment, however, as to Wireless's infringement claim under the doctrine of equivalents. *See id.* at *11. Sony now seeks reconsideration of this portion of *Wireless II*.

Sony contends in its motion to reconsider, as it did in its summary judgment motion, that the disclosure-dedication rule precludes application of the doctrine of equivalents in this case.[1] "Under the disclosure-dedication rule, 'when a patent drafter discloses but declines to claim subject matter, . . . this action dedicates that unclaimed subject matter to the public.'" *Id.* at

---

[1] Sony relies exclusively on the disclosure-dedication rule. That is, Sony does not assert that, if the disclosure-dedication rule does not apply, it is nonetheless entitled to summary judgment because its accused devices are not sufficiently equivalent to the alphanumeric keyboard to be infringing under the doctrine of equivalents. The court thus has no occasion to address whether Sony would be entitled to summary judgment on that basis. Such a motion, however, would require leave of court under N.D. Tex. Civ. R. 56.2(b).

*10 (omission in original) (quoting *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002)).  Sony maintains that the scope of the '173 patent cannot be read to cover the accused devices, which have twelve-key keypads rather than alphanumeric keyboards, because the patent specification disclosed the twelve-key keypad as an alphanumeric input device and yet claimed only the alphanumeric keyboard.  In *Wireless II* the court rejected Sony's argument on the ground that the '173 patent did not disclose the twelve-key keypad in combination with the accused devices' predictive-text software.  The court reasoned that

> [t]he '173 patent discloses a mobile phone with a twelve-digit keypad capable of alphanumeric data entry by "switch[ing] the device into a text entry mode, then press[ing] a key repeatedly to access a particular one of a subset of characters available for each key. It is this specific method of alphanumeric data entry that the specification criticizes as being extremely slow, awkward, error prone, and not appropriate for a device intended to transfer textual data on a regular basis.  If the only method of alphanumeric data entry on the accused devices were to repeatedly press one of the twelve keys to access the desired alphanumeric character out of a subset of characters associated with that key, then the disclosure-dedication rule would arguably apply. But . . . the accused devices utilize predictive text software that permits a user to input a given letter or number by pressing a key on the keypad only once. This method of alphanumeric data entry was not disclosed in the patent specification.  Thus the court holds on the present record that the disclosure-dedication rule does not bar application of the doctrine of equivalents.

*Id.* at *11 (internal citations omitted) (alterations in original).

II

A

Sony first posits that the court's holding in *Wireless II* is erroneous because the claims of the '173 patent are directed solely to the invention's physical configuration and thus the method of data entry is irrelevant. Sony contends that because the physical configuration of a twelve-key keypad was disclosed in the specification but not claimed, the disclosure-dedication rule bars the application of the doctrine of equivalents in this case.

Sony's argument has superficial appeal but does not withstand close examination. It is undoubtedly based on claim 1's preamble: "A hand-held, electronic computing device having a *physical configuration* comprising . . . ."[2] D. Nov. 2, 2005 App. 21 (emphasis added). In essence, Sony contends that because the preamble describes the claim limitations as a "physical configuration," the court must disregard the accused products' predictive-text software—which it inherently asserts is non-physical—when analyzing the disclosure-dedication rule. *See* Ds. Motion for Reconsideration 6 ("Since the disclosure-dedication rule focuses on whether particular subject matter was disclosed but not claimed, the analysis must examine whether the *physical*

---

[2]It could also be based on the '173 patent's title: "Physical Configuration of a Hand-Held Electronic Communication Device." D. Nov. 2, 2005 App. 1. But reading a claim limitation from a patent's title is even more tenuous than doing so from a claim's preamble, and the court doubts this is Sony's intent.

*configuration* of a 12-digit mobile-phone keypad like that on the accused Sony Ericsson devices is disclosed in the '173 patent but not claimed.").

"Preamble language that merely states the purpose or intended use of an invention is generally not treated as limiting the scope of the claim." *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed. Cir. 2006). "In considering whether a preamble limits a claim, the preamble is analyzed to ascertain whether it states a necessary and defining aspect of the invention, or is simply an introduction to the general field of the claim." *On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1343 (Fed. Cir. 2006). "If the body of the claim 'sets out the complete invention,' the preamble is not ordinarily treated as limiting the scope of the claim." *Bicon*, 441 F.3d at 952 (quoting *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1310 (Fed. Cir. 2002)). "However, the preamble is regarded as limiting if it recites essential structure that is important to the invention or necessary to give meaning to the claim." *Id.; see also Poly-Am., L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1309-10 (Fed. Cir. 2004) ("[A] preamble is a claim limitation if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim." (quoting *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999))).

Sony's argument fails because it ascribes too much

significance to the preamble term "physical configuration." This term does not state a necessary and defining aspect of the invention; rather, it is used simply to introduce the limitations that follow by noting that they are all physical in nature and that, together, they constitute a configuration or arrangement. The body of the claim sets out the complete invention;[3] the preamble term "physical configuration" is not part of the invention's essential structure, nor is it necessary to give life, meaning, and vitality to the claim. "Physical configuration" thus does not limit claim 1. Nor does the use of this term in the preamble preclude infringement by devices that use non-physical components, e.g., software,[4] to effectuate one of the invention's physical components.

The fact that the physical configuration of a twelve-key keypad was disclosed in the specification does not bar application of the doctrine of equivalents in this case because Wireless contends it is the keypad in combination with the accused devices' predictive-text software, rather than the keypad alone, that is equivalent to an alphanumeric keyboard. The use of the

---

[3] It could be argued that the preamble terms "hand-held" and "electronic computing device" are necessary to give life, meaning, and vitality to the claim and are thus limiting, although the court expresses no opinion on this matter. It is clear, however, that "physical configuration" is merely introductory, not limiting.

[4] The court assumes *arguendo*, without expressing any opinion on the matter, that the accused devices' predictive-text software is not physical.

introductory term "physical configuration" in claim 1's preamble does not preclude consideration of the predictive-text software because of its non-limiting nature. That is, the preamble does not require that each component used to effectuate the alphanumeric keyboard be physical in nature.

B

Next, Sony argues that if Wireless were permitted to reclaim the twelve-key keypad configuration through the doctrine of equivalents, the public would not be on notice as to which configurations of the device would infringe. Sony asserts that because the '173 patent disclosed a twelve-key keypad, if a device with a twelve-key keypad rather than an alphanumeric keyboard could infringe the '173 patent, then the public would have no way of knowing which disclosed matter infringes and which does not.

Sony's argument is misplaced, because Wireless does not seek through equivalents to reclaim an input device consisting merely of a twelve-key keypad—the configuration that the patent specification disparaged as being inferior—which configuration was indisputably dedicated to the public. Rather, the alphanumeric input device of the accused products consists of a twelve-key keypad in combination with predictive-text software. This configuration was neither criticized nor disclosed in the patent. Indeed, the purpose of the predictive-text software is undoubtedly to permit the twelve-key keypad to closely approximate a full

alphanumeric keyboard.  Whether it has done so to the point that the keypad/software combination is substantially equivalent to the alphanumeric keyboard is a fact issue.

In *Wireless III* the Federal Circuit noted that "to allow Wireless to claim a keyboard with less than a substantially full set of keys would injure the public's right 'to take the patentee at [his] word.'" *Wireless III*, 2006 WL 2091197, at *2 (alteration in original) (quoting *Honeywell Int'l, Inc. v. ITT Indus. Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006)).  The panel made this statement in the context of claim construction, as did *Honeywell*, which *Wireless III* cited with approval.  This court's claim construction in *Wireless I* and *II* was consistent with the public notice function of the patent's written description.  The court construed "alphanumeric keyboard" as not including a standard mobile-phone keypad, in part because the written description repeatedly disparaged the keypad's standard method of alphanumeric-text entry.  Thus the specification put the public on notice that a twelve-digit keypad, standing alone, would not infringe the patent.  But the specification never mentioned the input device of a twelve-digit keypad in combination with predictive-text software, and therefore did not provide the same notice with respect to this configuration.  The trier of fact will thus determine whether the accused devices' keypad/software configurations perform the same function in the same way to achieve the same result as an input device having a

QWERTY, FITALY, or Dvorak layout or any other alphanumeric layout that includes a substantially full set of alphabetic and numeric keys. *Cf. Honeywell*, 452 F.3d at 1318, 1320-21 (after construing claim term "fuel injection system component" as a fuel filter, determining whether accused device's quick connects performed same function in same way to achieve same result as fuel filter).

C

Finally, Sony contends that the proper method for recapturing subject matter is filing a continuation patent rather than asserting the doctrine of equivalents. Sony notes that Wireless has sought a continuation patent and argues that this is more appropriate than Wireless's equivalents claim. Sony does not, however, direct the court to any authority that supports the proposition that Wireless's efforts in seeking a continuation patent are in any way relevant to the equivalents inquiry. The court declines to hold that, by seeking a continuation patent, Wireless has necessarily conceded that the accused devices' keypad/software input configuration does not infringe under the doctrine of equivalents.

D

Of course, even if the accused devices' keypad/software configurations are considerably ahead of the standard mobile-phone keypad at entering alphanumeric data, the evidence adduced at trial may lead the trier of fact to find that the keypad/software

combination is *not* equivalent to an input device having a QWERTY, FITALY, or Dvorak layout or any other alphanumeric layout that includes a substantially full set of alphabetic and numeric keys. There may be inherent disadvantages to the keypad/software configurations that make the full alphanumeric keyboard easier to use and understand. But this is a factual dispute to be resolved at trial. *See, e.g.*, *Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1357 (Fed. Cir. 2002) ("Infringement under the doctrine of equivalents requires an intensely factual inquiry." (quoting *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1381 (Fed. Cir. 2000) (per curiam))). Because the '173 patent did not disclose the accused devices' keypad/software configurations, Wireless will have an opportunity at trial to present evidence demonstrating their equivalence.

\* \* \*

Sony's June 2, 2006 motion for reconsideration is denied.

**SO ORDERED.**

August 4, 2006.

                                       _____
                                       SIDNEY A. FITZWATER
                                       UNITED STATES DISTRICT JUDGE